**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

WANDA J. PRESTON,                    :

    Plaintiff,                    :

                              Case No. 3:11cv00222

 vs.                    :

                              District Judge Thomas M. Rose

MICHAEL J. ASTRUE,                    :    Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,                    :

    Defendant.                    :

# REPORT AND RECOMMENDATIONS[1]

## I.    INTRODUCTION

Plaintiff Wanda J. Preston brings this case challenging the Social Security

Administration's denial of her applications for Supplemental Security Income (SSI) and

Disability Insurance Benefits (DIB).  She claims disability from degenerative disc

disease, osteoarthritis, and left knee instability since January 1, 2006.  (*PageID##* 205-08,

209-12, 260).

After various administrative proceedings, Administrative Law Judge ("ALJ") Peter

B. Silvain denied Plaintiff's DIB and SSI applications based on his conclusion that

Plaintiff's impairments did not constitute a "disability" within the meaning of the Social

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and
Recommendations.

Security Act. (*PageID## 51-65*). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), 1383(c)(3), which Plaintiff is now due.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), the administrative record (Doc. #6), and the record as a whole.

Plaintiff asserted in administrative proceedings that she is eligible to receive DIB and SSI because she is under a "disability" within the meaning of the Social Security Act. In the present case, Plaintiff seeks a reversal of the ALJ's decision, and remand of this case to the Social Security Administration for payment of benefits. At minimum, Plaintiff seeks to remand this claim for further proceedings. The Commissioner contends that an order affirming the ALJ's decision is warranted.

## II.     BACKGROUND

### A.     Plaintiff's Vocational Profile and Testimony

Plaintiff was 37 years old on the alleged onset date of disability, which defined her as a "younger person." *See* 20 C.F.R. §§404.1563(c); 416.963(c)[2]; *see also PageID##* 63, 284. Plaintiff has a high school education, *see* 20 C.F.R. §404.1564(b)(4); *see also*

---

[2] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI/DIB Regulations.

*PageID#* 266, and past relevant work experience in a restaurant and as a laborer in a factory. (*PageID##* 261, 269).

When reviewing her impairments at the administrative hearing, Plaintiff confirmed to the ALJ that she had undergone total bilateral knee replacement; suffered osteoarthritis at various joints; L5 to S1 degenerative disc disease with central herniation and annular tear that culminated in fusion; and carpal tunnel syndrome in her dominant left hand requiring surgical release. (*PageID##* 82-83). She noted that despite the surgery, her left hand still went numb and tingled. (*PageID#* 83). Plaintiff testified that she also suffered from osteoarthritis in her hands. (*PageID#* 84).

Plaintiff testified that she was 5' 7" tall and weighed 220 pounds. (*PageID#* 86). She lost her driver's licence for being sent to the penitentiary for receiving stolen property in 2004. (*PageID#* 88). Plaintiff testified that her source of income was SSI her son received for ADHD, speech, and learning disabilities. (*PageID#* 90).

During her previous job in fast food, Plaintiff's back locked up, and caused her to drop a deep fryer basket. (*PageID##* 92-93). She stopped working at her other jobs in fast food because she was unable to walk or stand, resulting in swelling and missed days. (*PageID#* 93). Plaintiff testified that since her right knee replacement surgery, her knee constantly swelled, she could not properly bend, and she had foot swelling as a result. (*Id.*).

Following surgery, she reported that her left knee was "doing okay." (*PageID#* 95). Despite carpal tunnel release surgery on the left side, she still experienced swelling

3

and found "it hard to hold onto something. I got to be careful when I grab stuff." (*PageID#* 96). Plaintiff testified that she needed surgery on her right wrist, but it is not as weak as the left. (*Id.*). Her back pain remained constant despite the surgery, and she could ease it only by lying down most of the time. (*Id.*).

Plaintiff testified that she can only hold a gallon of milk with both hands, and that it hurts to type – with cramping after about five to seven minutes. (*PageID#* 98). As to her daily activities, she gets her thirteen year old son up in the morning, then generally rests until around noon before trying to do a little housework. (*PageID##* 98-99). She fixed dinner in "spurts," and helped her son with his homework. (*PageID#* 99). Plaintiff noted her sleep was restless because she was unable to get comfortable. (*PageID#* 100). She cleaned dishes once per day and did laundry once per week, (*id.*), but her son carries the laundry basket for her and transfers the wet clothes to the dryer. (*PageID#* 104). Vacuuming, dusting, and taking out the garbage were also all done by her son. (*PageID#* 100). She did no gardening or yard work. (*PageID##* 100-01). Plaintiff used a computer to check email for "15, 20 minutes" per day. (*PageID#* 101). She did not attend clubs, organizational meetings, or church on a regular basis, and she no longer had any hobbies. (*Id.*). She grocery shops once a month, noting that her son and a friend go along to help her because she cannot lift all of the items. (*PageID##* 103-04). She used a motorized cart to get through the store. (*PageID#* 104).

When examined by her counsel during the hearing, Plaintiff reported that the pain spasms in her buttocks and shoots down her right leg (with numbness and tingling).

(*PageID#* 105). She elevated her leg four to six hours of the day to try to control the swelling, and she places a pillow underneath it for elevation even when laying down. (*PageID#* 106). Despite total replacement, the right knee continued to wobble and give out beneath her. (*Id.*).

## C. <u>Medical Records and Opinions</u>

In the present case the records document that Plaintiff had a total left knee replacement on October 4, 2007 (*PageID##* 429-41, 442-45), with a subsequent total left knee manipulation on November 1, 2007. (*PageID##* 475-79). Plaintiff had a right total knee replacement on February 21, 2008 (*PageID##* 482-85, 486-95), with a subsequent total right knee manipulation on April 10, 2008. (*PageID##* 542-46). On April 6, 2009, Plaintiff underwent an L5-S1 lumbar fusion. (*PageID##* 675-704).

Plaintiff relies on the opinion of her primary care physician, Dr. Aggarwal, who found that as of July 2007, Plaintiff could stand and walk 2 ½ hours, and sit for 3 ½ hours, out of an eight-hour day. Dr. Aggarwal also limited Plaintiff to a lifting capacity of five pounds, with marked limitations in pushing, pulling, bending and repetitive foot movements. (*PageID##* 616-17). He opined that Plaintiff was unemployable for 12 months or more. (*Id.*).

In November 2008, Dr. Aggarwal provided an updated evaluation, finding extreme limitation in pushing, pulling, bending, reaching, and repetitive foot movements, as well as capacities to stand and walk for 2 ½ hours and to sit for 4 ½ hours. (*PageID##* 554-

55).  Dr. Aggarwal again opined that Plaintiff was unemployable for 12 months or more.
(*Id.*).

In determining Plaintiff's residual functional capacity (RFC),[3] the ALJ gave "some weight" to opinions of the state agency physicians, Dr. McCloud and Dr. Gahman. (*PageID#* 61).  Drs. McCloud and Gahman opined that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk about six hours in a workday; sit for about six hours in a workday; push and pull within normal limits; but never climb a ladder, rope or scaffold.  (*PageID##* 405-12, 474).  Dr. McCloud observed that Plaintiff was only partly credible. (*Id*)

## III.    ADMINISTRATIVE REVIEW

### A.    "Disability" Defined

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  A "disability" consists only of physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. §404.1545(a); *see Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

## B.     Social Security Regulations

Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence; *see PageID## 52-53; see also* 20 C.F.R. §404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.     Is the claimant engaged in substantial gainful activity?

2.     Does the claimant suffer from one or more severe impairments?

3.     Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.     Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.     Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

## C.     ALJ Silvain's Decision

At Step 1 of the sequential evaluation, ALJ Silvain found that Plaintiff has not engaged in substantial gainful activity since January 1, 2006, the alleged onset date. (*PageID#* 53).

The ALJ found at Step 2 that Plaintiff has the severe impairments of degenerative disc disease and annular tear of the lumbar spine with residuals of fusion; bilateral degenerative disease of the knees with residuals of bilateral total knee replacements; esophagitis; gastritis; sliding hiatal hernia; osteoarthritis of the hands; and left carpal tunnel syndrome. (*Id.*). The ALJ also found no substantial evidence of any other impairments which significantly limit Plaintiff's vocational capabilities, noting that Plaintiff's medically determinable mental impairments of pain disorder and adjustment disorder, considered singly and in combination, do not cause more than minimal limitations in her ability to perform basic mental work activities and are therefore nonsevere. (*PageID#* 56).

At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria in the Listing of Impairments. (*PageID#* 58).

At Step 4, the ALJ concluded that Plaintiff retained the RFC to perform sedentary[4] exertional work, with the following limitations: lifting up to 10 pounds occasionally;

---

[4]The Regulations define sedentary work as involving the ability to lift " no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools...." 20 C.F.R. §404.1567(a).

standing and walking 2 hours and sitting up to 6 hours in an eight hour work day, with normal breaks; allowing the worker to alternate sitting or standing positions at 15 minute intervals throughout the day; no use of foot controls; occasionally pushing and pulling on the left; no climbing ladders, ropes or scaffolds; occasional climbing ramps or stairs; occasional stooping, kneeling, crouching or crawling; occasional fingering, that is fine manipulation of objects no smaller than a paper clip; avoid all exposure to hazardous machinery and unprotected heights; and avoid jobs requiring driving or operation of motor vehicles.  (*Id.*).

The ALJ concluded at Step 4 that Plaintiff was not capable of performing her past relevant work as a fast food worker or press operator.  (*PageID#* 63).

At Step 5, the ALJ used section 201.28 of the Grid as a framework, and considering Plaintiff's age, education, work experience, and RFC, found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform on a sustained basis.  (*PageID##* 64-65).

The ALJ's findings throughout his sequential evaluation led him to ultimately conclude that Plaintiff was not under a disability and was therefore not eligible for DIB or SSI.  (*PageID#* 65).

## IV.    JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir.

9

2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r. of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r. of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.  DISCUSSION

## A.  Plaintiff's Contentions

Plaintiff argues that the decision of the ALJ denying her benefits should be reversed because the ALJ improperly evaluated the impact of Plaintiff's obesity on her ability to function in a work environment.  Specifically, the ALJ's decision does not contain a discussion of Plaintiff's obesity.  (Doc. #7, *PageID##* 710-12).  Plaintiff also contends that the ALJ failed to give controlling weight to the opinion of Plaintiff's primary treating source, Dr. Aggarwal.  (*Id.* at *PageID##* 712-15).  Finally, Plaintiff argues that the ALJ did not properly evaluate Plaintiff's pain and he erroneously understated Plaintiff's symptoms – leading to an overstated RFC.  (*Id.* at *PageID##* 715-19).

## B.  Analysis

### 1.  Obesity

Plaintiff argues the ALJ's decision denying her benefits should be reversed because the ALJ did not consider her obesity, as required under Social Security Ruling 02-1p.[5]  (Doc. #7 at *PageID#* 712).

Obesity, as defined in SSR 02-1p, "is a complex, chronic disease characterized by excessive accumulation of body fat."  2002 SSR LEXIS 1, *2.  SSR 02-1p further states

---

[5] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273, n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).  Social Security Rulings have been assumed to be binding on the Commissioner in the same way as Social Security Regulations. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004); *Ferguson*, 628 F.3d at 273, n.1.  In this case, the Court makes the same assumption regarding Social Security Ruling 02-1p.

that the National Institutes of Health has established guidelines for classification of overweight and obese adults in its "Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults" ("Clinical Guidelines"). (*Id.* at *4).

The Clinical Guidelines classify an overweight or obese individual based on that person's Body Mass Index (BMI).[6] (*Id.*). An adult with a BMI of 30.0 or above is considered "obese." (*Id.*). Obesity is further divided by the Clinical Guidelines into three levels: Level I (BMI of 30.0-34.9); Level II (BMI of 35.0-39.9); and, Level III (BMI greater than or equal to 40.0). (*Id.*).

SSR 02-1p notes that "[o]besity is a risk factor that increases an individual's chances of developing impairments in most body systems," and "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." (*Id.* at *6). Not surprisingly, therefore, the Social Security Administration provides that it "will consider obesity in determining whether: [1] The individual has a medically determinable impairment . . . .; [2] The individual's impairment(s) is severe . . . .; [3] The individual's impairment(s) meets or equals the requirements of a listed impairment in the listings . . . .; and [4] The individual's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy. . . ." (*Id.* at *7) (bracketed numbering added).

---

[6] The ratio of an individual's weight in kilograms to the square of his or her height in meters is the person's BMI. SSR 02-1p, 2002 SSR LEXIS, *4.

"When establishing the existence of obesity, [the SSA] will generally rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well as weight and height." (*Id.* at *8). The SSA will also, "in the absence of evidence to the contrary in the case record, . . . accept a diagnosis of obesity given by a treating source or by a consultative examiner." (*Id.* at *8-*9). In the event that no diagnosis of obesity is contained within the record, SSR 02-1p provides that the SSA "may ask a medical source to clarify whether the individual has obesity" **or** may elect to use its own judgment in making this determination. The ability of the SSA to use its judgment to establish the presence of obesity pursuant to SSR 02-1p, however, is only available "when the evidence in a case does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body weight or BMI . . . ." SSR 02-1p, 2002 SSR LEXIS 1, *9.

In this case, Defendant argues that it was proper for the ALJ to use his own judgment in determining whether the medical findings and other evidence in the case record established the presence of obesity. (Doc. #10 at *PageID#* 742, citing SSR 02-1p at *8). Defendant's argument is flawed for two reasons, however. First, the ALJ's decision lacks any indication that he actually used his own judgment and determined whether Plaintiff has obesity. Second, even if the ALJ's decision did indicate he decided whether Plaintiff has obesity, making such a determination would still not be proper in this case because the record contains at least two diagnoses of moderate obesity: Dr. James Borchers, M.D., noted in May 2007 that Plaintiff is "moderately obese," (Doc. #6-

7 at *PageID#* 415), and Dr. Jerry Flexman, Ph.D., indicated in September 2007 that Plaintiff is "moderately obese and weight is stable." (Doc. #6-7 at *PageID#* 424). Additional evidence in the record is also consistent with these diagnoses. For example, during the administrative hearing in March 2010, Plaintiff testified that she was 5' 7", currently weighed 220 pounds, and weighed even more in 2007. (*PageID#* 86). Dr. Aggarwal's notes show Plaintiff's weight from 2007 through 2009 ranged from 230 to 247 pounds, *see PageID##* 523, 527, 535, 542, 540, 544, and her two recorded BMI figures were 37 and 38 (classifying her obesity as "Level II" under the Clinical Guidelines). *See PageID##* 540, 544; *see also* 2002 SSR LEXIS 1, *4.

At Step 2, therefore, the ALJ erred by failing to perform "an individualized assessment of the impact of obesity" on Plaintiff's functioning, and deciding whether her obesity is severe. *See* SSR 02-1p, 2002 LEXIS 1, *12. Although the mere failure of an ALJ to consider a claimant's medically determinable impairment as nonsevere, instead of severe, may be found to be "legally irrelevant," *see Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 190-91 (6th Cir. 2009), such is not the case here because there is no indication the ALJ even considered Plaintiff's obesity as an impairment – severe or nonsevere – nor that he considered her obesity at any step in the sequential analysis. *Simpson* explains the regulatory basis for this error:

> Pursuant to 20 C.F.R. §[] 404.1523...: "In determining whether your physical or mental impairment or impairments are of a sufficient medical severity ... we will consider the combined effect of all your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the

combined impact of the impairments will be considered throughout the disability determination process."

Pursuant to 20 C.F.R. §[] 404.1545(a)(2)...: "If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."

*See Simpson,* 344 Fed. Appx. at 191, n.1. Defendant argues the ALJ's RFC finding is nonetheless sufficient because, even though he did not explicitly evaluate Plaintiff's obesity, he "considered the opinions of Drs. Aggarwal and DeGenova, who both recorded Plaintiff's weight." (Doc. #10 at *PageID#* 741). In support of his position, Defendant quotes *Bledsoe v. Barnhart*, 165 F. Appx. 408, 412 (6th Cir. 2006), which provides "[T]he ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity." Although at first glance such a quote seems helpful to Defendant's position, further analysis reveals *Bledsoe* is of little assistance here.

In *Bledsoe*, the United States Court of Appeals for the Sixth Circuit upheld the district court's judgment affirming the Commissioner of Social Security's denial of Karen Bledsoe's application for disability benefits relating to the following impairments: "asthma exacerbated by pneumonia, depressive neurosis, obesity, hypertension, respiratory condition (wheezing and shortness of breath), headaches, post-surgical carpel tunnel syndrome, a lesion on her right thorax, generalized anxiety and depressive disorders, panic attacks, foot pain, tarsal tunnel syndrome, mild nerve entrapment at the

right ankle diagnosed in 1996, and lasting effects from a 1996 auto accident in which she suffered a lacerated spleen and renal contusion." *Id.* at 409.

On appeal, one of the arguments raised by Bledsoe was that the ALJ's finding that she could perform her past work as an assembler is not supported by substantial evidence and is procedurally improper. Specifically, Bledsoe argues that her obesity was not considered by the ALJ when determining she could work as an assembler. *Id.* at 412. The Court of Appeals found this argument "unavailing because the ALJ did consider all impairments including obesity when making the determination that [Bledsoe] could work as an assembler," *id.*, and further noted that "the ALJ made explicit mention of Bledsoe's obesity in his finding of facts." *Id.* Notably different in this case, however, is that the ALJ did not explicitly mention Plaintiff's obesity in his RFC findings, nor anywhere else in the decision.

After noting the ALJ explicitly mentioned Bledsoe's obesity in his finding of facts, the Court of Appeals further stated that "the ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity." *Id.* (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504, 105 Fed. Appx. 836 (7th Cir. 2004)). Defendant appears to believe that *Bledsoe* means an ALJ may make absolutely <u>no</u> mention of obesity "if he credits an expert's report that considers obesity." Yet such an interpretation seems to misconstrue this portion of *Bledsoe*, and contradicts SSR 02-1p, which provides that at Step 4, "[a]s with any other impairment, [the SSA] will explain how [it] reached [its] conclusions on whether obesity caused any physical or mental limitations." 2002 SSR

LEXIS 1, *17.  Instead, *Bledsoe* appears merely to provide that if obesity is generally mentioned during Step 4 then it need not be further <u>specifically</u> addressed by the ALJ if already <u>specifically</u> mentioned in an expert's report that is credited by the ALJ in the RFC discussion.

The problem here is that, as with the remaining portion of the ALJ's decision, Step 4 is entirely devoid of any mention – general or specific – regarding Plaintiff's obesity.

Obesity is a disease, and should be evaluated no differently than any other medically determinable physical or medical impairment.  2002 SSR LEXIS 1, *3, *11. To single out obesity as an impairment that an ALJ may completely ignore or overlook at Step 4 clearly could not have been the intention of the decision in *Bledsoe*, yet following Defendant's interpretation would allow such a result in this case.  Certainly an expert's report that is credited by an ALJ may sufficiently take into consideration the severity and functional effects of obesity in determining a claimant's RFC – and the ALJ need not further specifically address obesity if that is the case – but there must be at least <u>some</u> indication or general mention by the ALJ that he or she is aware of, and has considered, the claimant's obesity.  Without such an acknowledgment, one is only left to speculate whether the ALJ in fact relied on the expert's report in considering obesity, or overlooked or ignored the impairment entirely.  Such an omission, despite Defendant's contentions otherwise, is reversible error in this case.  *See, e.g., White v. Comm'r Soc. Sec.*, 312 Fed. Appx. 779, 787-88 (6th Cir. 2009) ("Although the ALJ did not err in finding that [the claimant's] mental impairment was not severe, the ALJ gave no explanation for totally

discounting the objective evidence of [the claimant's] mental impairment in determining [her] RFC. . . . [The ALJ'] total discounting of the mental impairment is not supported by substantial evidence."); *see also* SSR 02-1p, 2002 SSR LEXIS 1, *18 ("As with any other impairment, [the SSA] will explain how [it] reached [its] conclusions on whether obesity caused any physical or mental limitations.").

### 2. Dr. Aggarwal's Opinion

Plaintiff next argues that the ALJ erred in rejecting the opinion of Dr. Aggarwal that Plaintiff was unable to sustain full-time competitive work activity.

The treating physician rule, when applicable, requires the ALJ to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a nonexamining medical advisor or a one-time examining physician or psychologist or a medical advisor who testified before the ALJ. *Blakley*, 581 F.3d at 406 (6th Cir. 2009); *see Wilson*, 378 F.3d at 544 (6th Cir. 2004). A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record. (*Id.*).

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the

treating physician." *Blakley*, 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544).

More weight is generally given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(1). Yet the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p. Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. § 404.1527(d), (f); *see also* Ruling 96-6p at *2-*3.

When weighing Dr. Aggarwal's opinions, the ALJ found his conclusions "cannot be given controlling or even deferential weight" because they supposedly "are neither well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with the other substantial evidence in the record." (*PageID# 60*). The ALJ continued: "The only plausible explanation for his pessimistic assessments of claimant's functional capabilities is that such assessments were based on unquestioning acceptance of claimant's subjective complaints." (*Id.*).

This assessment by the ALJ failed to apply many of the factors outlined in 20 C.F.R. § 404.1527(d)(2), including the length of the relationship; the nature and extent of

the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision.

There remains the possibility that the ALJ's errors were harmless. *See Bowen*, 478 F.3d at 747-48; *Wilson*, 378 F.3d at 546-47. However, "[a] court cannot excuse the denial of a mandatory procedural requirement protection simply because . . . there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. '[A] procedural error is not made harmless simply because the [aggrieved party] appears to have had little chance of success on the merits anyway.' To hold otherwise, and to recognize substantial evidence as a defense to non-compliance . . . would afford the Commissioner the ability to violate the regulation[s] with impunity and render the protections promised therein illusory. The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action . . . found to be . . . without observance of procedure required by law.'" *Wilson*, 378 F.3d at 546 (internal citations omitted).

Additionally, the ALJ's legal error was not harmless in this case because the record contained significant objective evidence tending to support the treating physicians'

opinions. As noted above, Plaintiff has an extensive surgical history, and Dr. Aggarwal, as a family practitioner, is in a far better position to opine on the practical impact in terms of functional limitations occasioned by Plaintiff's clinical symptoms and examination results.

Remand is required for a proper evaluation of the opinion of the treating physician based on Social Security's own rules and regulations.[7]

## VI. REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).

Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

Plaintiff asks that the matter be remanded to the Commissioner with directions for the grant of benefits. *See* Doc. # 7 at *PageID#* 719. Granting benefits in this case,

---

[7]In light of the above review, and the resulting need for remand of this case, an in-depth analysis of Plaintiff's remaining contentions is unwarranted.

however, is not warranted. Nonetheless, due to the problems discussed above, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g). On remand the ALJ should be directed to evaluate Plaintiff's disability claim under the required five-Step sequential analysis to determine anew whether Plaintiff was under a disability and thus eligible for DIB or SSI. Upon performing the new analysis, the ALJ should ensure the medical source opinion of Dr. Aggarwal is evaluated under the legal criteria set forth in the Commissioner's Regulation and Rulings, and as required by case law; and also that Plaintiff's obesity is properly considered, in light of SSR 02-1p.

Accordingly, the case must be remanded to the Commissioner and the ALJ under Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1.      The Commissioner's non-disability finding be vacated;

2.      No finding be made as to whether Plaintiff Wanda J. Preston is under a "disability" within the meaning of the Social Security Act;

3.      This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and,

4.      The case be terminated on the docket of this Court.


June 8, 2012                                   _____s/Sharon L. Ovington_____
                                               Sharon L. Ovington
                                               United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).